UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN M.,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C20-5482-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in (1) failing to consider the impact of his obesity, (2) assessing the medical opinion evidence, and (3) discounting his subjective complaints. (Dkt. # 19 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1970, has three years of college education and additional vocational certifications, and previously worked as a sales representative and maintenance technician. AR at 229. Plaintiff was last gainfully employed in September 2016. *Id.* at 228.

ORDER - 1

In February 2017, Plaintiff applied for benefits, alleging disability as of September 16, 2016. AR at 214-17. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 114-16, 122-24, 128-29. After the ALJ conducted a hearing in March 2019 (*id.* at 31-90), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-25.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: degenerative disc disease; osteoarthritis of the left knee, status post total left knee replacement; and cirrhosis.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: he can lift/carry up to 20 pounds occasionally and 10 pounds frequently. He can stand/walk for about two hours out of an eight-hour workday, and sit for about eight hours out of an eight-hour workday. He can climb ramps or stairs for about one hour out of an eight-hour workday, and can stoop for about one hour out of an eight-hour workday. He cannot climb ladders, ropes, or scaffolds; crouch; or crawl. He must avoid concentrated exposure to extreme cold, vibration, and hazards.

Step four: Plaintiff cannot perform his past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-25.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  DISCUSSION

### A.  The ALJ Did Not Err in Discounting Plaintiff's Subjective Complaints

The ALJ discounted Plaintiff's subjective complaints because the objective medical evidence is inconsistent with Plaintiff's allegations of disabling limitations. AR at 19-21. Plaintiff argues that the ALJ reasoning is not sufficiently clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Specifically, Plaintiff argues that the ALJ failed to specifically explain why the objective evidence was inconsistent with his allegations, and instead only attempted to show that the

1  objective evidence failed to fully corroborate his allegations, which is not in itself a clear and
2  convincing reason to discount his complaints. (Dkt. # 19 at 16-17.)

3  The ALJ's decision does not find that the objective medical evidence merely failed to
4  corroborate Plaintiff's allegations; instead, it identifies specific inconsistencies between
5  Plaintiff's allegations and the medical evidence. AR at 19-21. For example, the ALJ found that
6  although Plaintiff alleged that his cirrhosis caused disabling limitations, the evidence showed
7  that this condition had mostly resolved before the adjudicated period began. *Id*. at 20. The ALJ
8  also noted that "contrary to [Plaintiff's] hearing testimony," his portal vein thrombosis resolved
9  with treatment as of November 2016. *Id*.

10  The ALJ also contrasted Plaintiff's allegations of knee-related limitations with the
11  records showing improvement since his knee replacement surgery, and noted that although
12  Plaintiff testified at the hearing that he experienced frequent numbness in his feet and legs, tests
13  routinely showed normal sensation. AR at 21. The ALJ also summarized Plaintiff's allegations
14  of a disabling spinal impairment and noted that the imaging showed at most mild or mild-to-
15  moderate findings, and the functional testing showed full strength in all major muscle groups. *Id*.

16  These findings do not show only a lack of corroboration, but also identify specific
17  inconsistencies that undermine the reliability of Plaintiff's allegations. The ALJ reasonably relied
18  on these inconsistencies to discount Plaintiff's subjective complaints. *See Carmickle v. Comm'r*
19  *of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical
20  record is a sufficient basis for rejecting the claimant's subjective testimony."). Accordingly, the
21  Court finds no error in the ALJ's assessment of Plaintiff's testimony.

22  **B.      The ALJ Did Not Harmfully Err in Assessing Medical Opinion Evidence**
23  Plaintiff challenges the ALJ's assessment of certain medical opinions, each of which the

ORDER - 4

Court will address in turn.

      1.    *Legal Standards*[3]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

      2.    *Joan Sullivan, M.D.*

Dr. Sullivan performed an independent medical examination of Plaintiff in October 2017, and issued an addendum the following month, in connection with his worker's compensation claim. AR at 1223-45. Dr. Sullivan recommended that Plaintiff undergo a left knee replacement surgery and she indicated that he was not yet fixed and stable. *Id*. at 1233. In light of his pre-surgery symptoms, Dr. Sullivan opined that Plaintiff could perform only sedentary work. *Id*. at 1231.

The ALJ found Dr. Sullivan's opinion consistent with the contemporaneous evidence, and also indicated that the post-surgery evidence shows that Plaintiff's condition improved to the point where he could perform a restricted range of light work. AR at 21-22. Plaintiff argues that the records show that his condition did not improve after surgery, citing treatment notes from the months following surgery. (Dkt. # 19 at 12 (citing AR at 1259, 1261, 1268, 1271, 1399, 1784).) These post-surgery records mention temporary limitations pertaining to Plaintiff's recovery from

---

[3] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 apply to the ALJ's consideration of medical opinions.

his March 2018 surgery and his need for work conditioning before returning to any type of work. *See, e.g.*, AR at 1259-60 (releasing Plaintiff to work light duty full-time, six months after knee surgery), 1262 (Plaintiff became deconditioned after not working for a period time; needs work conditioning), 1784 (Plaintiff had been participating in work conditioning, but fell and broke ribs and discontinued work conditioning; reported continued problems squatting and kneeling), 1839-40 (indicating that in February 2019, Plaintiff needed to complete physical therapy and work conditioning and should be at maximum medical improvement in 8-10 weeks). Plaintiff has not shown that the ALJ erred in finding that his condition improved to some degree after his knee replacement surgery, or in discounting the applicability of Dr. Sullivan's opinion to the post-surgery period. *See Thomas*, 278 F.3d at 957 (ALJ may consider improvement with treatment in discounting physician's opinion).

3.     *David Coons, D.O.*

Dr. Coons treated Plaintiff's knee condition and completed multiple activity prescription forms in connection with Plaintiff's worker's compensation claim, describing Plaintiff's abilities and limitations. The ALJ's decision mentions form opinions from May 2018, July 2018, and December 2018, and explains that the ALJ discounted them for a variety of reasons: they describe only temporary limitations, touch on an issue reserved to the Commissioner (namely whether Plaintiff can work), are unsupported by clinical findings, and are inconsistent with the more recent treatment notes showing improvement. AR at 22-23. Plaintiff's opening brief contends that the ALJ erred in assessing these form opinions.[4] (Dkt. # 19 at 7-11.)

---

[4] In the response brief, the Commissioner notes that the record contains other activity prescription forms, and argues that because Plaintiff did not assign error in the opening brief to the ALJ's failure to explicitly address those, Plaintiff waived any assignment of error pertaining to those opinions. (Dkt. # 20 at 8-9 (citing AR at 1260, 1397, 1406, 1544, 1621, 1699, 1709, 1817, 1833-34, 1844).) The Commissioner goes on to argue that even if the assignment of error was not waived, any error was at most harmless because

A couple of months after Plaintiff's knee surgery, Dr. Coons completed an activity prescription form that described Plaintiff as unable to work between May 7, 2018, and July 5, 2018. *See* AR at 1535. The ALJ discounted this activity prescription form as failing to satisfy the 12-month durational requirement (*id*. at 22), and Plaintiff argues that Dr. Coons' form opinions should be considered together to determine whether they satisfy the durational requirement as a group. (Dkt. # 19 at 9.) But even if Dr. Coons' opinions were considered together, they do not consistently describe the same limitations; as noted by the ALJ, Dr. Coons' opinion of the most Plaintiff could do changed by July 2018, when he found Plaintiff could perform modified duty through September 2018. AR at 22 (citing *id*. at 1598). In December 2018, Dr. Coons indicated that Plaintiff was not released to work through January 2019, pending independent medical examination results and lab testing. *Id*. at 1819. Because Dr. Coons' opinions did not remain constant over the months following Plaintiff's surgery, even viewing them together does not establish that any particular limitation persisted for the requisite length of time. Plaintiff has not shown that the ALJ erred in considering Dr. Coons' opinions individually or in finding that they did not describe limitations that satisfy the durational requirement.

The ALJ next discounted Dr. Coons' activity prescription forms to the extent that they opined as to whether Plaintiff could work, because this issue is reserved to the Commissioner.

---

the other opinions were repetitive of the opinions the ALJ did discuss, such that the reasons provided by the ALJ to discount the May 2018, July 2018, and December 2018 forms apply equally to the forms not discussed. (Dkt. # 20 at 8-9.) Plaintiff argues on reply that the Court should consider this issue despite his waiver (dkt. # 21 at 5), but does not address the Commissioner's argument as to the harmlessness of any error stemming from the ALJ's failure to discuss certain form opinions.
    The Court agrees with the Commissioner that any error in the ALJ's failure to list all of the activity prescription forms is harmless because the ALJ's stated reasons to discount three of the forms applies to the other forms, particularly the temporary duration and the inconsistency between Plaintiff's overall improvement after surgery and the disabling limitations mentioned in some of the form opinions. *See Foote v. Berryhill*, 747 Fed. Appx. 636, 637 (9th Cir. Jan. 10, 2019) (explaining when a failure to discuss a treating physician's opinion can be harmless error (citing *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015))).

ORDER - 7

1  AR at 23. Plaintiff does not dispute that whether he can work is an issue reserved to the

2  Commissioner, but argues that the ALJ was not simply free to disregard the remainder of Dr.

3  Coons' opinions. (Dkt. # 19 at 9-10.) But the ALJ provided additional reasons to discount Dr.

4  Coons' opinions, and thus did not simply disregard the opinions because they touched on an

5  issue reserved to the Commissioner.

6  　　　Plaintiff next argues that the ALJ erred in assessing the July 2018 form opinion because

7  the ALJ suggested that this form opinion released Plaintiff to modified duty, but

8  contemporaneous treatment notes from a different provider define modified duty to be part-time

9  sedentary work. (Dkt. # 19 at 9 (citing AR at 1263).). The record, however, indicates that Dr.

10  Coons' opined that Plaintiff could perform "light duty" on a full-time basis, but Plaintiff could

11  not work full-time because he needed to attend his physical therapy appointments and did not

12  have enough leave to cover those absences. *See* AR at 1260, 1266. Thus, in order to allow

13  Plaintiff some schedule flexibility to attend appointments, Dr. Coons' assistant adjusted the

14  recommendation to limit Plaintiff to four hours of work per day. *See id*. at 1258. This

15  discrepancy created confusion as to Plaintiff's abilities, and Dr. Coons subsequently reaffirmed

16  his opinion that Plaintiff could perform light-duty work on a full-time basis, but took Plaintiff off

17  work for a month to allow him to attend therapy appointments. *See id*. at 1258, 1260. The full

18  context of the record therefore does not show that the ALJ erroneously described Dr. Coons'

19  belief that Plaintiff could perform light-duty work on a full-time basis. Furthermore, the ALJ

20  explicitly credited Dr. Coons' July 2018 finding of a stooping restriction and incorporated a

21  consistent limitation in the RFC assessment. *See id*. at 18, 22-23.

22  　　　Plaintiff goes on to argue that the ALJ erred in finding the specific functional limitations

23  described by Dr. Coons in the December 2018 form to be inconsistent with the treatment notes

and instead based on Plaintiff's subjective complaints. *See* AR at 23. Plaintiff points to some treatment notes mentioning atrophy in his quadriceps, residual weakness, reduced range of motion in the left knee, and tenderness to palpation. (Dkt. # 19 at 10 (citing AR at 1259, 1261, 1268, 1271, 1399, 1784).) The treatment notes contemporaneous with the December 2018 opinion, however, do not mention atrophy or weakness but instead document Plaintiff's reports of significant pain with squatting and kneeling. *See* AR at 1252-53.

By February 2019, Dr. Coons' found that Plaintiff needed physical therapy and work conditioning, but that he should be at maximal medical improvement in 8-10 weeks, and would probably have permanent restrictions against squatting and kneeling even then. *See* AR at 1840. Dr. Coons' December 2018 form opinion had described limitations in squatting and kneeling, but also significant restrictions as to standing, climbing, stooping, and twisting, and these limitations do not appear to have objective support in the record. *See id*. at 1819. The February 2019 form opinion described less restrictive limitations. *See id*. at 1844. The ALJ reasonably discounted Dr. Coons' December 2018 form opinion to the extent it described functional limitations not supported by and inconsistent with the most recent treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Because the ALJ provided specific, legitimate reasons to discount Dr. Coons' form opinions, the Court affirms this part of the ALJ's decision.

        4.    *State Agency Consultant*

A State agency consultant provided an opinion in November 2017 as to Plaintiff's functional abilities and limitations. AR at 109-11. The ALJ gave significant weight to the State agency opinion, although the ALJ found Plaintiff to be more limited in light of subsequent evidence from treating and examining sources. *Id*. at 23.

Plaintiff argues that the ALJ erred in assigning the greatest weight to a non-examining provider's opinion. (Dkt. # 19 at 13.) Plaintiff has not shown that the State agency opinion was contradicted by all of the other evidence in the record, however, and thus has not shown that the ALJ erred in crediting the State agency opinion to some extent. *See, e.g.*, *Andrews*, 53 F.3d at 1041. Plaintiff has cited no authority holding that it is *per se* erroneous for an ALJ to credit a State agency opinion when treating or examining source opinions are discounted for legally sufficient reasons. Although it may be true, as Plaintiff contends in reply (dkt. # 21 at 4), that a State agency opinion does not constitute substantial evidence on its own that would support discounting a treating or examining source opinion, the ALJ did not cite the State agency opinion as a reason to discount the treating or examining source opinions. Plaintiff has not identified any error related to the hierarchy of medical opinion evidence in the ALJ's decision, or otherwise shown that the ALJ erred in assessing the State agency opinion.

    **C.**    **The ALJ Did Not Harmfully Err in Failing to Discuss Plaintiff's Obesity**

Plaintiff argues that the ALJ erred in failing to include obesity as a severe impairment at step two, and that this error infected the remainder of the ALJ's decision. (Dkt. # 19 at 2-6.) Plaintiff has pointed to treatment notes describing him as obese during the adjudicated period (AR at 370-71, 1084-85, 1162, 1271), and contends that the ALJ erred in failing to consider the impact of his obesity at any point in the decision. The Commissioner argues that Plaintiff has not

shown that his obesity caused any restrictions not addressed by the ALJ in the decision, and thus any error in failing to mention Plaintiff's obesity at step two (or any subsequent step) is at most harmless. (Dkt. # 20 at 11-12.)

The record does contain some mention of Plaintiff's obesity as well as his subsequent weight loss. *See, e.g.*, AR at 41, 370-71, 1084-85, 1162, 1271. Plaintiff has not shown that he would have met or equaled a listing if the ALJ had explicitly considered his obesity, and has also failed to show that his obesity caused any particular symptoms or limitations not discussed by the ALJ. Therefore, Plaintiff has failed to show that any prejudice resulted from the ALJ's failure to explicitly discuss obesity at step two or any subsequent step in the sequential evaluation. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way."); *Burch v. Barnhart*, 400 F.3d 676, 681-84 (9th Cir. 2005) (finding no error where the claimant has failed to establish the existence of an obesity-related limitation not accounted for in the ALJ's RFC assessment).

Although Plaintiff suggests that the ALJ's "silent disregard" of the evidence of his obesity cannot constitute a harmless error (dkt. # 21 at 3), he fails to acknowledge that an ALJ need not discuss every piece of evidence in the record. An ALJ must explain why significant, probative evidence is rejected, but Plaintiff here has neither shown that the evidence of his obesity was significant and probative nor that it was rejected. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Accordingly, the Court finds no harmful error in the ALJ's failure to explicitly discuss Plaintiff's obesity in the decision.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 1st day of April, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge